MOLYNEAUX *v.* BRADLEY, MILLER & CO.

1. MASTER AND SERVANT—ASSUMED RISK—KNOWLEDGE.
   The doctrine of assumed risk does not, as a matter of law, bar the recovery of a common laborer employed about a mill, who, on being called by the foreman from his regular work to operate a molding machine in the place of an employé who was absent, attempted to run the machine without receiving any instructions or warning concerning the dangers of the same, and in attempting to look under the machine which was working improperly, placed his hand on the bed plate which appeared to plaintiff smooth and level, but in doing so placed his fingers among rapidly revolving knives, which he claimed were invisible.[1]

2. SAME—CONTRACTS—DANGERS KNOWN OR OBVIOUS.
   The assumption of risks arises from the contract of employment; the servant assuming the risk of all obvious dangers incident to the service which were known or should have been known by him.

3. SAME—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.
   Plaintiff, claiming that he had never operated a similar machine, and that he so informed the foreman at the time he was placed in charge of it, and that he followed the usual method when he placed his hand on the bed plate of the machine, was not, as a matter of law, guilty of contributory negligence. OSTRANDER, C. J., dissenting.

4. SAME.
   On the basis of testimony given by one of plaintiff's witnesses that he supposed plaintiff was proceeding to seize a sliver that stuck up from plaintiff's molder, that he did not see the accident; that if a man had reached over and taken hold of the sliver it would have easily pulled off, defendant was not entitled to an instruction that if the jury should find he was reaching over the bed plate to get out a sliver, he assumed the risk; because the conclusion of the witness was not competent evidence.

[1] Assumption by servant of risks incident to service, see note in 47 L. R. A. 162.
   Master's duty to warn and instruct servant, see notes in 44 L. R. A. 33; and 29 L. R. A. (N. S.) 111.

5. EVIDENCE—IMPEACHMENT. ·
    Testimony tending to show the foreman's knowledge of dangers attendant upon plaintiff's work was admissible to impeach the testimony of the foreman given on defendant's behalf, relating to the obvious character of the danger.

6. SAME—CUSTOM—OPERATION OF MACHINE.
    It was competent to show the custom of experienced operators of the molding machine to place their hands on the bed plate in looking underneath.

Error to Bay; Collins, J. Submitted June 16, 1911. (Docket No. 32.) Reargued October 17, 1911. Decided November 3, 1911.

Case by Thomas Molyneaux against Bradley, Miller & Company, a corporation, for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Pierce & Kinnane*, for appellant.

*Kenna, Lightner & Oxtoby*, for appellee.

McALVAY, J. Plaintiff recovered a judgment against defendant for a permanent injury to his hand received while in defendant's employment while working at a molding machine in defendant's mill. The contention on his part was that he was employed as a common laborer to shovel coal and handle lumber at the rate of $1.50 per day; that on the morning of the day in question, while shoveling coal, he was ordered by the acting foreman, who was in charge, to leave his work and go to work on this molding machine for a short time, for the reason that the regular man who operated it was away; that plaintiff told him he had never run a molder, and knew nothing about it; that the foreman told him to go and run it for a short time, that he had sent for a man who would soon be there, and then plaintiff could return to shoveling coal. The foreman gave him no instructions relative to running this machine and no warning as to its dangers. This machine was located in the new part of the mill, and on each side of it were other molding machines operated by experienced

men. Plaintiff spoke to one of these men, telling him that the foreman, Cameron, had sent him to run a molder, and that he had never run one and knew nothing about it. This man, whose name is Richards, said that he would show him all he could about it. The molding machine was running at the time plaintiff came there, and the man Richards, whose machine was also running, and requiring his attention, showed plaintiff how to operate the feed of this machine. Plaintiff then started to feed the strips of lumber into this molding machine and worked about half an hour, when his attention was called to the fact that something was wrong by Richards, who motioned him with his hand, which he understood meant to shut off the feed. He did this at once, and then went around towards the back of the machine, and discovered that the strips of lumber were running one on top of the other, and noticed a sliver coming up through the machine about as large as a lead pencil and twice as long. He says that he did not know the cause of the strips running on top of one another, and went back to the end of the machine to find out what was the matter. He stooped over for the purpose of looking under to discover the trouble, at the same time putting his hand on the bed plate of the machine. His fingers were immediately cut into pieces. He had put his hand upon the rapidly revolving knives in and below the bed plate, one foot from the rear end of the machine.

He says that he had no knowledge that the knives were there under the bed plate, and had been given no notice of that fact. He says that the bed plate looked perfectly smooth, that no knives were visible or anything to indicate anything in motion. These knives were revolving at more than 3,000 revolutions per minute. Upon this proposition as to the appearance of the knives, he was supported by the testimony of Richards and Charters, both experinced operators of such machines. No witness but the plaintiff testifies how the accident occurred. Richards was at his machine, but did not see plaintiff at the time

of the injury. There is no material contradiction of plaintiff's testimony relative to the circumstances under which he was directed to run this machine, or that no instructions were given him at the time or notice of dangers attending its operation. The fact that he had not before run a molder was disputed, and testimony was offered which it is claimed showed that he was acquainted with machinery of the general character of this molder. The same is claimed, also, to be the effect of his cross-examination. The jury, at defendant's request, was taken to view the premises, and observed the machine both when it was still and when it was running. At the close of plaintiff's case, defendant moved for an instructed verdict for reasons which appear in the errors assigned and relied upon by defendant. At the close of the case, counsel for plaintiff stated that the only negligence relied upon was the failure of defendant to perform its alleged duty to warn and instruct plaintiff.

The errors assigned, which are relied upon by defendant, are presented in its brief under the following synopsis:

"(1) The court erred in not directing a verdict for the defendant.

"(2) The court erred in not properly presenting to the jury defendant's theory, viz.: That plaintiff was injured as he was reaching to remove a sliver from above the machine.

"(3) The court erred in its instructions to the jury upon the question of negligence on the part of defendant and of the plaintiff's contributory negligence.

"(4) The court erred in its rulings upon the admission of evidence."

1. Under its claim that a verdict should have been directed in its favor, the contention made in the court below, and this court is that upon this record (*a*) defendant owed no duty to warn or instruct plaintiff; (*b*) that plaintiff assumed the risk connected with operating the machine; (*c*) that plaintiff was guilty of contributory negli-

gence in placing his hand on the bed plate without looking.

As the only negligence relied upon by plaintiff when the case was closed was that defendant was guilty of negligence in not warning and instructing plaintiff as to this machine, the first contention made by defendant upon this branch of the case is of the greatest importance. The claim that no such duty was imposed is based upon what defendant contends this record discloses as to the knowledge and experience of plaintiff as to the operation of machinery used in and about defendant's business, in planing, dressing, matching, and molding lumber and timber; the claim being that plaintiff was an experienced millman, who required no warning or instruction. It appears from the record that plaintiff from December, 1899, to February, 1908, had been employed at defendant's mill during five different periods; that the last hiring was January 9, 1908, as a common laborer at $1.50 per day, and that he went to work handling lumber and shoveling coal. At the time he was injured he was called from his work shoveling coal to run this molding machine. Three of his terms of employment were for two months and less in length and two were for ten and eight months, respectively. The business was carried on in what the record designates as the " old mill " and the " new mill." The old mill contained most of the machinery. In the new mill there were three molding machines and a resawing machine. The record shows that plaintiff, during the times he worked for defendant, had frequently been engaged in taking lumber to certain machines and the finished product away from others. It appears, also, that he had worked for short periods upon several of the machines in the old mill, either as operator or assistant. He denies that he had ever worked at machines in the new mill or had ever run a molder. He worked upon machines only when called from his work to help at a machine temporarily when they were short handed. There is no evidence that he ever received wages other

than as a common laborer.   The record shows that upon all of the machines in the old mill the knives were protected and guarded; that the rear knives of the molders in the new mill were not guarded or covered.   The molders differed from the machines upon which plaintiff occasionally had worked when ordered, in that they had uncovered knives in the rear bed plate.   The foreman of defendant's plant testified that plaintiff was "the most trustworthy young man in his employ, and in that respect he was the exception to them all."   The record also shows that in operating this molding machine, by reason of the hood over the knives and parts of the machine obstructing the view, the rear bed plate cannot be seen from the front.   It also appears that it was the general usage and custom in operating such machines for the operator, if the machine went wrong, to go to the rear and look under the machine to discover the trouble, and in so doing to put his hand on the bed plate.   The conclusion drawn by defendant is that the court should have instructed a verdict in its favor, and held, as a matter of law, that, in this case, by reason of the acquaintance of plaintiff with machinery in this mill, and his experience, defendant owed him no duty to warn and instruct.   All but three of the cases cited in support of this contention are cases where the doctrine of the assumption of risk has been applied.

It does not appear to us that the doctrine applies, for the reason that the service required was not within the scope of his employment.   Assumptions of risk arise from the contract, the servant assuming the risk of all obvious dangers incident to the service which were known or should have been known by him.   There was no contract of hiring express or implied to do this work.   Plaintiff was a common laborer who did the work he was hired to do, except as he was called from such work in cases of emergency.

At the final analysis the questions of his employment, his knowledge of machinery generally in the mill, and of this molding machine, and the uncovered knives in the rear bed plate were in dispute, and therefore questions

for the jury, and the view of this machine, both in operation and standing still, was doubtless of great assistance to the jury in determining some of these questions. We cannot hold as a matter of law that in this case defendant was not under a duty to warn and instruct plaintiff, or that plaintiff assumed the risk.

The last reason urged why a verdict should have been directed for defendant is that plaintiff was guilty of contributory negligence in placing his hand upon the bed plate without looking. Much of what has already been said relative to a directed verdict must necessarily be applicable to this last contention. The defendant has considered all of these reasons together and cited cases as applying to all of them. Three of these cases are clearly determined upon the contributory negligence of a plaintiff, but in our opinion no one of them is in point, as a reading of the opinions will disclose, viz.: *Sakol* v. *Rickel*, 113 Mich. 476 (71 N. W. 833); *Perlick* v. *Wooden-Ware Co.*, 119 Mich. 331 (78 N. W. 127); *Beghold* v. *Auto Body Co.*, 149 Mich. 14 (112 N. W. 691, 14 L. R. A. [N. S.] 609). In the instant case plaintiff testifies that he had never worked on a molding machine; that whatever he had done about machines had been done in the old mill. It is undisputed that all the knives in those machines were protected. He testifies without dispute that the foreman was informed when he ordered him to run this machine that he had never run one, and knew nothing about one. It is also undisputed that he so told the man Richards, who then showed him about the feed. He found the machine running when he came to it, and he worked at feeding it for half an hour. He was notified that something was wrong by Richards, and at his signal stopped the feed. He went to the rear, where the uncovered knives making 3,000 to 4,000 revolutions a minute, projecting one-sixteenth of an inch above the bed, were running. He says that they were invisible, that the bed plate looked perfectly smooth. Stooping to look under the machine, he put his hand on the bed plate, and was

injured. This, briefly, is his testimony, which is supported by other witnesses. Some of it is sharply contradicted. Therefore the question of contributory negligence in this case was a question of fact, and not of law.

2. The claim that the court did not fairly submit defendant's theory of the case to the jury is based upon the claimed effect of the testimony of the witness Richards. This witness testified:

" He stopped the feed and went to the rear part, and I saw him stick out his hand like that, and I supposed he was going to grab the sliver sticking up, and I turned my attention to my machine, and turned around and he was pulling his hand out of the knives.    *    *    *    I was not looking at the time he got hurt, for my piece ran out and it was time to put another one in.    *    *    *    I heard a noise, and I turned around to look, and he was pulling his hand out of the knives.    *    *    *    I noticed the sliver there after plaintiff got hurt.    *    *    *    I think that, if a man had reached over and taken hold of the sliver, it would have pulled off easily."

The request bearing upon this testimony, which was refused, reads:

"If you believe from the evidence that, at the time plaintiff was injured, he was reaching his hand over the bed plate, getting a sliver out of the machine, then your verdict will be for the defendant, because, under such circumstances, plaintiff assumed the risk of what he was doing."

In the brief it is claimed:

" If what Richards said was true, we think it apparent that plaintiff was guilty of contributory negligence."

This was not the ground upon which the request was asked nor upon which it was properly refused; nor was such a request warranted by the testimony of Richards, who did not see the accident, and whose conclusion was not competent evidence. This disposes of the refusal to give other requests based upon the same testimony.

3. It is next claimed that the court erred in its instruc-

tions to the jury upon the question of defendant's negligence and plaintiff's contributory negligence. This covers practically the entire charge of the court as given upon these questions. We find that the court correctly stated the law as to what would constitute negligence of defendant, and contributory negligence on the part of plaintiff, and that in this and other respects the charge of the court, as given, does not warrant criticism.

4. Errors assigned upon the admission of evidence. Under this subdivision 11 assignments of error are grouped and conclusions are drawn by counsel; that by admitting certain of the testimony the issue was diverted from the question of defendant's negligence to that of the veracity of the witness; and that the admission of certain other testimony was error, in that it was not competent as bearing upon the questions involved.

The first objectionable testimony refers to the matter of impeachment of the foreman of the plant which was material as bearing upon his knowledge of the dangers of this machine and the plaintiff's ignorance.

The second referred to the established usage or custom of experienced operators of these molding machines placing their hands upon the rear bed plate in looking under the machine. It is claimed by the plaintiff that this was for the purpose of showing that plaintiff in this matter was in the exercise of ordinary care by following the usage and custom of persons engaged in the same work.

The court was not in error in admitting the evidence.

The judgment is affirmed.

BIRD, STEERE, MOORE, BROOKE, BLAIR, and STONE, JJ., concurred with McALVAY, J.

OSTRANDER, C. J. (*dissenting*). Plaintiff was operating a machine which, as he knew, finished the material he was running through it on all four sides. After a time the machine did not properly dispose of the material which was being run through it, and the feed was stopped by

the plaintiff, the knives which did the finishing were not stopped, and plaintiff went to the rear of the machine to see what the matter was.   Proposing to look under the machine, he put one hand on the bed plate into a set of revolving knives, the bearings of which were below the bed plate, but which through an opening in the bed plate planed the material as it passed over them.   He lost his fingers.

As is stated by Mr. Justice McALVAY, the only negligence of the defendant which the plaintiff relied upon was that the defendant should have instructed him concerning the use of the machine, pointing out to him (warning him of) the dangers connected with its operation.   With the printed record are exhibited certain photographs of the machine, and from an examination of them we find what we should expect to find, and what plaintiff from his knowledge of machinery must have known about, namely, that the location of the revolving knives, by the use of which the material which was run through the machine was finished, was indicated by a shaft and pulleys and a belt outside of the machine.   In other words, the most casual observation of the machine would have discovered to the plaintiff that a rapidly revolving shaft ran through the machine just below the bed plate directly under the point where he placed his hand.   It is not clear what instruction would have done for his benefit.   The argument made in his behalf, based upon his testimony and that of others, is that in looking at the bed plate of the machine the rapidly revolving knives were not visible, the whole bed plate appearing to be a mass of smooth, shiny metal.   The testimony is that short knives, not so long as the opening in the bed plate, were in use.   But, aside from this, it is clear that, having stopped the feed of the machine, that portion of it which was left running was connected with and operated the knives by which the finishing of the material was done.   It was obvious that the revolving shaft, immediately over which, on the bed of the

machine, he placed his hand, performed some duty with respect to the operation of the knives. Plaintiff, as matter of law, was guilty of contributory negligence, and the jury should have been so instructed.

The judgment should be reversed, and no new trial granted.